**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **No.: 1:19-cr-00169-BAH-2** |
| **MARGARET ANN FLOWERS,** | |
| *Defendant.* | |

## GOVERNMENT'S OMNIBUS REPLY IN OPPOSITION TO DEFENDANT'S PRETRIAL MOTIONS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully files this omnibus reply in opposition to Defendant Margaret Ann Flowers's Pretrial Motions (collectively referred to as "Def. Pretrial Motions" (ECF No. 85)).[1]  In support of its opposition to the defendant's motions, the Government relies on the following points and authorities, and such other points and authorities as may be cited at a hearing on the motions.

## I.    BACKGROUND

Members of a group called Code Pink, individuals calling themselves the Embassy Protection Collective, and members of a group called the Popular Resistance, including the defendants, began occupying the Venezuelan Embassy on or about April 10, 2019.  *See* ECF No. 1-1 (Affidavit in Support of Criminal Complaint and Arrest Warrant) at ¶ 12.  Defendant Zeese represented himself as the spokesperson for the Embassy Protection Collective, including the

---

[1] The defendant filed a single pleading containing the following motions:   (1) Motion to Dismiss the Information;  (2) Motion to Sever Defendants and Motion for Additional Peremptory Challenges with Liberal Exercise;  (3) Request for Notice of the Government's Intent to Use Evidence;  (4) Motion for Leave to File Pretrial Motions; and  (5) Motion to Adopt Other Defendants' Motion(s).

defendants, and the Popular Resistance as part of this Collective.   *Id*. at ¶ 13.   Defendant Flowers, the moving defendant, is one of the co-directors of the Popular Resistance.   *Id*.   In an April 24, 2019 e-mail from Defendant Zeese to the State Department, Mr. Zeese stated that he "will serve as the police liaison between the Collective and law enforcement if you decide to approach the embassy to remove us."   *See* Exhibit 28 in the Government's Exhibit list. [2]   The defendants apparently took over the Venezuelan Embassy because they disagreed with the United States Government's recognition of Juan Guaidó as the President of Venezuela and of Carlos Alfredo Vecchio and Gustavo Tarre as Venezuelan Ambassadors to the United States.

On April 26, 2019, Ambassadors Vecchio and Tarre sent diplomatic notes to the U.S. Department of State requesting that assistance in removing the defendants and others from the Venezuelan Embassy.   *Id.* at ¶¶ 16-17.   In those notes, the Ambassadors waived the inviolability of Venezuelan Embassy's premises and requested "protective services in ensuring that the Embassy premises is free from trespassers" and expressed that the Venezuelan government "considers any persons in or on the Embassy premises without the express consent of the Embassy led by Ambassador Vecchio to be trespassing." *Id.* at ¶¶ 16-17.

On May 13, 2019, Defendant Zeese sent an email to the United States Department of State, copying among others, Defendant Flowers, stating, among other things, that "[t]his is the 34th day of our living in the Venezuelan embassy in Washington, DC," and that "[w]e are prepared to stay another 34 days."   *Id.* at ¶ 12; Exhibit 27 of the Government's Exhibit list.   This email was

---

[2] The Government presumes that this is e-mail, identified as Exhibit 28 on the Government's Exhibit list, is one of Defendant Zeese's statements that Defendant Flowers argues creates a *Bruton* issue.   Because Defendant Flowers has not identified any particular statements in her motion, the Government is left to make its best guess as to which statements the defendant's motion is addressing.

unsolicited and not made in response to any communication from law enforcement.[3]   Later that same day, on May 13, 2019, Special Agents from the U.S. Department of State's Diplomatic Security Services delivered trespassing notices to the defendants, who were present at the time in the Venezuelan Embassy in Washington, D.C., and ordered the defendants to vacate the Embassy. *See generally id.*   Those trespassing notices made clear that both the Ambassadors and federal law enforcement were "directing anyone who is present" in the Venezuelan Embassy "to depart from it immediately."   *Id.* at Exhibit E.   Further, the notices informed that the defendants the failure to comply with "these requests and orders" will be trespassing in violation of federal law and may be arrested and criminally prosecuted.   *Id.*   The notices were also read in-person to the defendants who were standing in the lobby of the Venezuelan Embassy.   *Id.* at ¶ 31.

At the time of the reading, Defendant Zeese began yelling at Special Agent Bradley Gilmore, claiming that Zeese was not trespassing, stated that Ambassador Carlos Vecchio was a puppet of the U.S. government, and that U.S. law enforcement did not have the authority to enter the Venezuelan Embassy.   *Id.*   All four defendants were present with Defendant Zeese in the lobby of the Embassy when he made these statements.   *Id.*   Despite receiving these notices, the defendants refused to vacate, and on May 16, 2019, the defendants were arrested and charged with one count of interfering with the protective functions of the U.S. Department of State, pursuant to 18 U.S.C. § 118. This statute makes it a crime to "obstruct[], resist[], or interfere[] with a Federal law enforcement agent" engaged in certain protective functions. 18 U.S.C. § 118.

---

3 The Government presumes that this is e-mail, identified as Exhibit 27 on the Government's Exhibit list, is one of Defendant Zeese's statements that Defendant Flowers argues creates a *Bruton* issue.

## II.     ARGUMENT

### A. DEFENDANT'S MOTION TO DISMISS THE INFORMATION SHOULD BE DENIED BECAUSE THE CHARGE AGAINST THE DEFENDANT DOES NOT RESTRICT HER FIRST AMENDMENT RIGHTS AND BECAUSE 18 U.S.C. § 118 IS NEITHER OVERBROAD NOR VOID FOR VAGUENESS.

The defendant first moves to dismiss the Information on the basis that the statute is unconstitutional as applied to her behavior.  *See* Def. Pretrial Motions at 1-4.  The defendant inaccurately conflates First Amendment jurisprudence with overbreadth and vagueness challenges, seemingly seeking to dismiss the case against her based on the unfounded and imprecise assertions that the relevant statute, *i.e.,* 18 U.S.C. § 118, is: (1) an improper regulation of speech, (2) overbroad, and (3) void for vagueness.  *See id.*  In support of her motion to dismiss, the defendant fails to cite to any relevant case law and relies on specious arguments.  As explained further below, the defendant's as-applied constitutional challenge to the relevant charge is faulty in its reasoning and application to the facts in this case.  None of her enumerated arguments have any basis, as 18 U.S.C. § 118 is content neutral, is being used to regulate conduct in a non-public forum, and is neither overbroad nor vague.  By its own language, the statute is aimed at criminal conduct, such as obstructing, or interfering, not speech.  Because the defendant cannot establish that 18 U.S.C. § 118 improperly regulates speech, is overbroad, or void for vagueness, the defendant's Motion to Dismiss the Information should be denied in its entirety.[4]

Defendant Flowers moves to dismiss the Information, charging one count of 18 U.S.C. § 118, claiming that the statute, as-applied to her conduct: (1) unconstitutionally regulates her speech; (2) is overbroad; and (3) is void for vagueness.  Notably, the defendant's claims that the

---

[4] The Government contends that a hearing is not necessary on this motion, as the defendant has not established or cited sufficient facts or law to warrant a full argument before the Court. *See generally*, *Duddles v. United States*, 399 A.2d 59, 63 (D.C. Ct. App. 1979) (citing to a number of federal cases where the defendant did not make sufficient factual allegations to warrant a hearing).

statute unconstitutionally regulates her speech, is overbroad, and is void for vagueness are made in a summary fashion, and the defendant mischaracterizes both her conduct as "merely standing in the lobby, observing the process, and refusing '*a request*' to leave," (Def. Pretrial Motions at 4) (emphasis in original), and the law.

### 1. 18 U.S.C. § 118 Does Not Improperly Regulate the Defendant's Speech or Protected First Amendment Conduct.

In the First Amendment context, parties can either make a facial or as-applied challenge to a statute. *See generally, Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973) (explaining why the First Amendment permits parties to have standing for a facial challenge). Here, the defendant is asserting an as-applied challenge to 18 U.S.C. § 118. An as-applied challenge requires "a court to assess a statute's constitutionality with respect to the particular set of facts before it." *Hodge v. Talkin*, 799 F.3d 1145, 1150, 1156 (D.C. Cir. 2015) (holding that a federal statute that restricted expressive activity within the Supreme Court building and grounds was constitutional as-applied to the Supreme Court plaza). To prevail on an as-applied First Amendment challenge, a defendant must show that the statutes are unconstitutional as-applied to her particular speech activity. *See Edwards v. District of Columbia*, 755 F.3d 996, 1001 (D.C. Cir. 2014). In other words, the defendant must establish that 18 U.S.C. § 118, as applied to her refusal to comply with an order to leave the Venezuelan Embassy, unconstitutionally infringes on her First Amendment rights. Her motion does not, and cannot, meet this necessary threshold.

The First Amendment is a foundational pillar of our democracy and guarantees that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people to peaceably assemble." U.S. Const. amend. I. It is beyond dispute that the First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes

unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Nonetheless, courts have consistently held that the First Amendment is not absolute and that Congress may place limits on its exercise. *See e.g.*, *Chaplinksy v. New Hampshire*, 315 U.S. 568, 572 (1942).

To assess First Amendment challenges, courts consider three factors: (1) whether the conduct at issue was in a public or non-public forum; (2) whether the statute at issue conduct-neutral or conduct-specific; and (3) whether the statute is reasonable. If the conduct at issue regulates a non-public forum, then the statute "need only be reasonable and content neutral to be valid under the First Amendment." *United States v. Caputo*, 201 F. Supp. 3d 65, 70 (D.D.C. 2016) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)). The Supreme Court has explained that "a regulation is neutral if it refrains from targeting a specific viewpoint or subject matter." *Id.* (citing *Reed v. Twn. Of Gilbert*, 135 S. Ct. 2218, 2227 (2015)). In turn, if the statute is not related to the suppression of free expression, then the Court determines whether the regulation reasonably advances the Government's interests. *Talkin*, 799 F. 3d at 1164-65 ("Unlike a public forum, there is no requirement in a nonpublic forum "that the restriction be narrowly tailored" to advance the government's interests."). The regulation at issue "need only be *reasonable;* it need not be the most reasonable or the only reasonable limitation." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc*., 473 U.S. 788, 808, (1985) (emphasis in original). The Government addresses each prong in turn.

a.   The Venezuela Embassy Is A Non-Public Forum.

The defendant is charged with criminal conduct that occurred in a non-public forum, namely inside the Venezuelan Embassy, and not on the street or in another public meeting place. To determine whether a forum is public or nonpublic, reviewing courts must "look[ ] to the policy

and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum." *Caputo*, 201 F. Supp. at 70 (citing *Cornelius*, 473 U.S. at 802). This determination here is simple.   The Venezuelan Embassy is a closed, non-public building that is neither owned nor controlled by the U.S. Government.   The U.S. Government has not, nor could it, authorize assembly or debate within the walls of the Embassy.   As such, the scene of the defendant's criminal behavior is a non-public forum and, as applied here, 18 U.S.C. § 118 is being used to regulate conduct within this non-public forum.

b.   <u>18 U.S.C. § 118 is a Content-Neutral Statute.</u>

As an initial matter, 18 U.S.C. § 118 is objectively content-neutral.   The Supreme Court has explained that "a regulation is neutral if it refrains from targeting a specific viewpoint or subject matter."   *Caputo*, 201 F. Supp. at 70 (citing *Reed*, 135 S. Ct. at 2227).   In distinguishing between content-based and content-neutral statutes, "[t]he government's purpose is the controlling consideration."   *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).   "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.   Government regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech." *Id.* (internal citations omitted).

Although it is somewhat unclear from her motion, the defendant does not appear to claim, nor could she, that the statute at issue distinguishes based on content.   Rather, 18 U.S.C. § 118 is wholly silent on the ideas or viewpoints of the persons who engage in the proscribed conduct.   *See* 18 U.S.C. § 118.   The statute is targeted at any *activity* that "obstruct[s]" or "interfere[s]" with federal law enforcement officers engaged in authorized protective functions without regard to the

actor's viewpoint, message, or subject matter.  As such, it is content-neutral and need only be reasonable to be deemed constitutional as applied to the defendant.

### c.  18 U.S.C. § 118 is Reasonable as Applied to the Defendant's Behavior.

Because the charged conduct occurred in a non-public forum and the statute at issue is content-neutral, the Court need only focus its analysis on whether the application of the statute is reasonable.  The defendant's motion appears to nebulously contend that 18 U.S.C. § 118 is unreasonable as applied to her behavior, because, in her words, she was "merely standing in the lobby" of a foreign embassy "and refusing '*a request*' to leave."  Def. Pretrial Motions at 4 (emphasis in original).  There is no basis for this contention.  The four defendants' refusal to vacate a foreign embassy after being directed and ordered to depart by federal law enforcement is criminal conduct well outside the bounds of protected First Amendment activity, and 18 U.S.C. § 118 is a reasonable statute that furthers the Government's important interests.

Specifically, the Government, and the Department of State specifically, needs to be able to complete its mission of protecting embassies generally, and maintaining the security of the Venezuelan Embassy, specifically. The Government undoubtedly has a compelling interest in maintaining the safety and security of foreign embassies by removing unlawful intruders from their midst, particularly when requested to do so by foreign governments. The Information and accompanying affidavit to her arrest warrant explain that the defendant and her co-defendants obstructed, resisted, and "interfered with the Department of State's protective service of maintaining the security of the Embassy of the Bolivarian Republic of Venezuela," by refusing to depart the Embassy after receiving trespassing notices. *See* ECF No. 1-1 (Affidavit in Support of Criminal Complaint and Arrest Warrant) at 11. The trespassing notices, which were read and delivered to the defendants made clear that the defendants were not lawfully within the Embassy

and that federal law enforcement officers were "directing anyone who is on this property to depart from it immediately." *Id.* at Exhibit E.   Further, the trespassing notices informed the defendants that "[a]ny person who refuse[d] to comply with these requests and orders to depart from this property will be trespassing in violation" of federal law.   *Id.*

The defendant, however, refused to comply with a lawful order to vacate the Venezuelan Embassy.   Her refusal to vacate the Embassy interfered with the ability of the Department of State Diplomatic Security Service agents to secure, maintain, and protect the Embassy.   Such safety measures are more than reasonable in light of the situation.   As such, there is no First Amendment violation and no improper infringement on the defendant's constitutional rights, and her motion should be denied.

### 2.   The Statute is Not Overbroad as Applied to Defendant Flowers.

The defendant additionally makes a First Amendment overbreadth challenge to 18 U.S.C. § 118 as applied to her behavior. *See* Def. Pretrial Motions at 3-4.   It seems from her bare motion that she is arguing that the statute "curtails too much speech in light of the government's underlying interests." *Talkin*, 799 F.3d at 1171 (explaining the analysis associated with "overbreadth" challenges).   Here, the Government's underlying interests include, but are not limited to, protecting and maintaining the safety and security of foreign embassies, ensuring the protection of U.S. embassies abroad through cooperation with foreign governments, keeping the peace within the District of Columbia, and maintaining productive foreign relations with other countries such as Venezuela.

Once again, the fact that the statute at issue is content-neutral is important to the Court's analysis.   This is because "overbreadth scrutiny has generally been somewhat less rigid" in the context of content-neutral statutes.   *Broadrick*, 413 U.S. at 614.   "[I]n a case involving conduct

as well as speech," as is the case here, a defendant must establish that "the overbreadth of the statute '[is] not only [] real, but substantial,' in relation to the legitimate coverage of the statute" in order to prevail on an overbreadth challenge.   *United States v. Popa*, 187 F.3d 672, 678 (D.C. Cir. 1999) (quoting *Broadrick,* 413 U.S. at 615).   This is because "the overbreadth doctrine is 'strong medicine' to be applied 'sparingly and only as a last resort.'" *Id.* (quoting 413 U.S. at 615).

The defendant has not and cannot show here that 18 U.S.C. § 118 as applied to her conduct is "substantially" overbroad so to be found unconstitutional.   Indeed, in this case, she only summarily explains, without more, that overbroad statutes can demonstrate "great harm to particularly important speech," Def. Pretrial Motions at 4, and that the defendant was, in her view, simply standing in the lobby of a foreign embassy refusing a request from federal law enforcement to leave.   *Id.*   Regardless of the defendant's characterization of her behavior, she cannot and does not cite any case law to support the extreme result of deeming 18 U.S.C. § 118 overbroad in this context.   The statute, as applied here, did not improperly restrict the defendant's speech; it simply restrained her illegal conduct of remaining in the Embassy to the detriment of the security of the site.   As such, the statute is not overbroad and the defendant's motion must be denied on this point.

### 3.  The Statute is Not Void for Vagueness.

Finally, the Government turns to the defendant's meritless vagueness challenge. As an initial matter, despite the inapposite contention in the defendant's pleading, the "[v]agueness doctrine is a product of the Due Process Clause of the Fifth Amendment, not the First Amendment."   *Caputo*, 201 F. Supp. 3d at 72 (citing *United States v. Williams*, 553 U.S. 285, 304 (2008)).   More specifically, under a due process analysis, a criminal statute, such as 18 U.S.C. § 118, is unconstitutionally vague if it is written so imprecisely "that it fails to give ordinary people

fair notice of the conduct it prohibits," or is "so standardless that it invites arbitrary enforcement." *Id.* (quoting *Johnson v. United States*, 135 S.Ct. 2551, 2556 (2015)).   In evaluating a vagueness challenge to a statute, courts "are not concerned with vagueness in the sense that the term 'requires a person to conform his conduct to an imprecise but comprehensible normative standard,' whose satisfaction may vary depending upon whom you ask.   Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning 'specifie[s]' 'no standard of conduct . . . at all.'"   *United States v. Bronstein*, 849 F.3d 1101, 1107-08 (D.C. Cir. 2017) (quoting *Coates v. Cincinnati*, 402 U.S. 611, 612, 614 (1971)) (internal citations omitted).   In other words, a statute is only unconstitutionally vague if it is "shapeless" or difficult for "an ordinary citizen to understand."   *See United States v. Class*, 930 F.3d 460, 465-67 (D.C. Cir. 2019).

The defendant is not clear in her pleading as to what portion of 18 U.S.C. § 118 she believes is vague, instead just generically explaining the danger of vague laws.   This is likely because 18 U.S.C. § 118 is anything but vague.   It is a succinct statute with language easily understood by a layperson.   It proscribes clear behavior, namely obstructing, resisting, or interfering with a federal law enforcement agent while that agent is performing protective functions.   *See* 18 U.S.C. § 118. The statute is short and to the point and does not require special knowledge to comprehend.   That the language of the statute prohibits a whole range of activities that may amount to obstructing, interfering, or resisting, does not change this analysis.   *See Bronstein*, 849 F.3d at 1107-10 (holding that a statute which prohibits "loud" language or the making of a "harangue" or "oration" in Supreme Court was not void for vagueness as it provided a normative standard of conduct). This is because 18 U.S.C. § 118's prohibition on obstructing, resisting, or interfering with a federal law enforcement agent engaged in protective functions is a comprehensible normative standard that is in no way difficult for an ordinary citizen to understand.   As required by due process

protections, it affords ordinary people fair notice not to obstruct, resist, or interfere, as well as, provides standards to prevent arbitrary enforcement. *See Caputo*, 201 F. Supp. 3d at 72. In summary, 18 U.S.C. § 118's prohibition on obstructing, resisting, or interfering, clearly provides a "comprehensible normative standard" and is in no way difficult for an ordinary citizen to understand, and the defendant has not established otherwise. As such, 18 U.S.C. § 118 is not unconstitutionally vague, and the defendant's motion to dismiss on these grounds should be denied.

## B. DEFENDANT'S MOTION TO SEVER SHOULD BE DENIED.

In addition to moving to dismiss the information in the case, the defendant has moved to sever her trial from that of her co-defendants. *See* Def. Pretrial Motions at 5-9. In support of this motion, the defendant puts forth four thinly-supported arguments. First, the defendant argues that *Bruton v. United States*, 391 U.S. 123 (1968), requires such severance. *See id.* at 5-7. Second, the defendant argues that there is "dramatically disparate" evidence against her in comparison to that against her co-defendants, such that severance is justified. *See id.* at 7. Third, the defendant contends that she and her co-defendants have "antagonistic and contradictory" defenses. *See id.* at 8. Fourth, the defendant argues that *DeLuna v. United States*, 308 F.2d 140 (5th Cir. 1962), compels severance because defense counsel would "have a duty to comment on the failure of another defendant to testify." *Id.* Defendant Flowers's arguments are both factually and legally baseless, and her request for severance should be denied.

Rule 8(b) of the Federal Rules of Criminal Procedure provides that defendants may be charged together "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b). Rule 14(a), in turn, permits severance of defendants if "it appears that a defendant or the

government is prejudiced by a joinder."   Fed. R. Crim. P. 14(a).   There is a "preference in the federal system for joint trials of defendants who are indicted together" because joint trials "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."   *Zafiro v. United States*, 506 U.S. 534, 537 (1993).   This preference is "especially strong when the respective charges require presentation of much the same evidence, testimony of the same witnesses, and involve two defendants who are charged, *inter alia,* with participating in the same illegal acts."   *United States v. Wilson*, 605 F.3d 985, 1016 (D.C. Cir. 2010) (internal quotation marks omitted) (quoting *United States v. Ford,* 870 F.2d 729, 731 (D.C.Cir.1989)).

"Although Rule 14 allows for severance of properly joined defendants, the defendant requesting the severance bears the heavy burden of showing that joinder would violate his constitutional fair trial rights."   *United States v. Edelin*, 118 F. Supp. 2d 36, 41 (D.D.C. 2000). A defendant seeking severance must show how a joint trial would subject her to "legally cognizable prejudice," *Zafiro*, 506 U.S. at 541, which in this context means a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."   *Id.* at 539.   The Supreme Court identified three specific examples when such prejudice might take place: (1) a complex case involving many defendants with markedly different degrees of culpability; (2) a case such as *Bruton v. United States*, 391 U.S. 123 (1968), where a joint trial would permit admission of incriminating evidence that would have been inadmissible against one of the defendants; and (3) when a joint trial would require exclusion of exculpatory evidence that would have been admissible in a single defendant's trial.   *Id.*; *Wilson,* 605 F.3d at 1016 (D.C. Cir. 2010).   "Since *Zafiro,* claims based on mutually antagonistic defenses have usually been found insufficient to warrant severance without a strong showing that such specific rights were impaired."   *United States v. Balter*, 91 F.3d 427, 433 (3d

Cir. 1996), *as amended* (Aug. 16, 1996) (collecting cases).   Also, "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials."   *Zafiro*, 506 U.S. at 540.

Moreover, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion."   *Edelin*, 118 F. Supp. 2d at 41 (quoting *Zafiro,* 506 U.S. at 538–39).   The defendant bears the burden not only of establishing legally cognizable prejudice but also demonstrating that "alternative methods for avoiding prejudice are not sufficient to ensure a fair trial."   *Id.* at 42.   Accordingly, severance is only appropriate if other methods of avoiding prejudice, such as limiting and cautionary instructions, are inadequate. *Id.* at 41-42. "Generally, the risk of prejudice can be reduced by instructing the jury on their duties and on the evidence because jurors are presumed to be able to follow the instructions of the Court."   *Id.* at 42.

### 1.  The Defendant's *Bruton* Challenge is Meritless.

As her first argument, the defendant contends that her trial must be severed from that of her co-defendants because the government may introduce statements by Defendant Zeese and that if Defendant Zeese does not testify, she would be denied her right of confrontation regarding his statements.   Def. Pretrial Motions at 5.   Nowhere in her motion, however, does the defendant either identify any particular statement made by Defendant Zeese to support her argument or offer any analysis whatsoever of how those statements would deprive the defendant of her rights; rather, the defendant merely recites some of the facts and holdings of *Bruton v. United States*, 391 U.S. 123 (1968), and *Richardson v. Marsh*, 481 U.S. 200, 202 (1987), without any assessment of how those cases implicate this case.

In *Bruton*, the Supreme Court held that the Confrontation Clause forbids the prosecution from introducing a nontestifying codefendant's confession implicating the defendant in the crime. *Bruton*, 391 U.S. 123.   Importantly, "*Bruton* applies only when a co-defendant's statement 'expressly implicates the defendant' and is 'so incriminating that it constitutes an exception to the general proposition that a judge's limiting instruction will prevent any improper use of the statement by the jury.'" *United States v. Ford*, 155 F. Supp. 3d 60, 67–68 (D.D.C. 2016) (quoting *United States v. Washington*, 952 F.2d 1402, 1404–05 (D.C. Cir. 1991)).   Otherwise, *Bruton* is satisfied when the co-defendant's statement is redacted to eliminate the other defendant's name and any reference to his or her existence.   *Id.* (quoting *Marsh*, 481 U.S. at 211).

Further, "[e]very circuit court to consider the issue . . . has concluded that Bruton's rule now applies only to testimonial out-of-court codefendant statements." *Lucero v. Holland*, 902 F.3d 979, 988 (9th Cir. 2018) (collecting cases from the First, Fourth, Fifth, Sixth, Eighth, Tenth, and D.C. Circuits holding same). Testimonial statements include "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, other formalized materials such as affidavits, depositions, prior testimony, or confessions, and statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *United States v. Moore*, 651 F.3d 30, 70 (D.C. Cir. 2011), *aff'd in part sub nom. Smith v. United States*, 568 U.S. 106 (2013); *see also United States v. Morrow*, No. CRIM.A. 04-355CKK, 2005 WL 3163803, at *4 (D.D.C. June 9, 2005) (describing testimonial statements as "knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be

used in future judicial proceedings."). In determining whether a statement is testimonial, "[t]he proper inquiry, then, is whether the declarant intends to bear testimony against the accused." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004).

The defendant has not identified any particular statements that she believes presents a *Bruton* issue, and the Government is not aware of any statements that would fall within *Bruton*. To the extent that the defendant is referring to e-mail communications from Defendant Zeese, those statements were unsolicited, not made in response to law enforcement inquiries, nowhere near the functional equivalent of in-court testimony, and Defendant Zeese's primary purpose in making these statements cannot fairly be said to have been to bear witness against the accused. As such they are non-testimonial, and there is no *Bruton* issue. Moreover, Defendant Zeese's statements are not hearsay because (1) his co-defendants adopted the statements (indeed, the defendant was cc'd in the electronic communication contained in Exhibit 27); or (2) Defendant Zeese was authorized to speak on behalf of his co-defendants; or (3) Defendant Zeese's statements constitute co-conspirator statements made during and in furtherance of the conspiracy.[5] *See* Rule 801(2).

### 2. There is No Disparate Evidence Against the Defendants.

Second, the defendant argues that she is entitled to severance given the "dramatically disparate" evidence against Defendant Zeese and the defendant. *See* Def. Pretrial Motions at 7.

---

[5] Generally, "[s]tatements satisfying the coconspirator non-hearsay rule under Federal Rule of Evidence 801(d)(2)(E) may be admitted against co-defendants without violating the Confrontation Clause." *United States v. Carson*, 455 F.3d 336, 365 (D.C. Cir. 2006). Moreover, "other circuits have uniformly held that such statements may be admitted so long as they were made in furtherance of an uncharged conspiracy in which the defendant participated" and that "the D.C. Circuit has likewise emphasized the agency-law principles underlying Rule 801(d)(2)(E) to conclude that out-of-court statements are admissible so long as they advance a joint endeavor in which the defendant was involved." *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 190 (D.D.C. 2015).

The defendant offers no support whatsoever for her contention that there is "dramatically disparate" (*id.*) evidence between her and Mr. Zeese, nor could she, because none exists.

As is the case here, there is an "especially strong" preference for joint trials for defendants charged together when the trial will require the "presentation of much of the same evidence, testimony of the same witnesses," and the defendants are charged "with participating in the same illegal acts." *Wilson*, 605 F.3d at 1016. As alleged in the Complaint, all four defendants were present in the Embassy on May 13, 2019, and all four defendants were notified, over the loudspeaker, in-person, and in writing, in the exact same manner at the exact same time in the exact same location that they were trespassing. All four defendants refused to exit the Venezuelan Embassy after being ordered to do so by Diplomatic Security Services. Here, there is little, if any, appreciable difference in the evidence against each of the four defendants, no difference in the severity of the charges, and no reason to believe that the jury will be unable either to reasonably compartmentalize the evidence against each individual defendant or the follow the Court's instructions.

As such, the defendant's motion to sever on this basis should be denied. *See e.g.*, *Edelin*, 118 F. Supp. at 43 (denying motion to sever in a six co-defendant case involving RICO and narcotic distribution because the case did not rise to the level of complexity necessitating severing the trials); *Ford*, 155 F. Supp. 3d at 69–70 (denying motion to sever conspiracy case involving seven co-defendants and 624 overt acts because, among other things, a jury instruction to consider each defendant's guilty individually was sufficient to cure any potential spillover prejudice.).

**3. Because the Defendants do not have Mutually Antagonistic Defenses, *DeLuna* does not Apply.**

As her third argument, the defendant asserts that her co-defendants have unidentified defenses that are antagonistic and contradictory to the defendant's unidentified defense, such that severance is justified. *See* Def. Pretrial Motions at 8-9. Finally, the defendant argues that she would have a duty to comment on the failure of the other defendants to testify, such that severance is warranted. *See id.* These arguments have no basis in fact or law, and the Government addresses them together below.

To justify severance, "a defendant must show more than that he was tried together with a co-defendant whose strategy was generally antagonistic to him." *United States v. Applewhite*, 72 F.3d 140, 144–45 (D.C. Cir. 1995). "Mutually antagonistic defenses exist where the acceptance of one defendant's defense is irreconcilable with the defense presented by a codefendant." *United States v. Gilliam*, 167 F.3d 628, 635 (D.C. Cir. 1999). "Even where codefendants implicate each other, their defenses are not necessarily mutually antagonistic, and even when they are mutually antagonistic, they are not necessarily improperly prejudicial." *Id.*; *see also Zafiro*, 506 U.S. at 538–39 ("[M]utually antagonistic defenses are not prejudicial per se"); *United States v. Lighty*, 616 F.3d 321, 348–49 (4th Cir. 2010) (explaining that the mere presence of hostility among the defendants, the desire of one defendant to inculpate another, or mere finger pointing are insufficient to justify severance, rather, there must be "such a stark contrast presented by the defenses that the jury is presented with the proposition that to believe the core of one defense it must disbelieve the core of the other or that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty").

Under the so-called *DeLuna* rule, "when counsel for one defendant would have a duty to comment on the failure of a co-defendant to take the stand because of a head-on conflict between the defendants, then severance should be granted." *United States v. Mitchell*, 397 F. Supp. 166, 178 (D.D.C. 1974), *aff'd sub nom. United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976). The "critical ingredient for the invocation of the *DeLuna* rule is the presence of counsel's duty to comment, which in turn exists only when the defenses raised are truly antagonistic." *United States v. Lemonakis*, 485 F.2d 941, 952 (D.C. Cir. 1973) (collecting cases).

No mutually antagonistic defenses are apparent in this case. Since the inception of this case, the defendants have been closely aligned and coordinated in their interactions with the Court and the Government and with the public at large through their website, joint speaking tours across the country, and group interviews. *See, e.g.*, *https://defendembassyprotectors.org/embassy-protectors-january-tour* ( "The four arrested Embassy Protectors – Kevin Zeese, Margaret Flowers, Adrienne Pine, and David Paul – will be on an East Coast speaking and fundraising tour from January 24 to January 28, 2020.").

Because Defendant Flowers has not offered any cogent argument or evidence to support a severance on the basis of mutually antagonistic defenses and because none exists, this motion should be denied. *See United States v. Franklin*, No. CR 04-128 (RMC), 2005 WL 8157514, at *14 (D.D.C. Dec. 16, 2005) (defendant's "argument that he may desire to present separate defenses on the various charges and that a joint trial could embarrass or confound him in the presentation of those defenses is too vague to establish that there exists a serious risk that a joint trial would compromise a specific trial right especially when he has declined to elaborate what those defenses might be.") (internal citations and quotations omitted); *United States v. Becker,* 585 F.2d 703, 707

(4th Cir.1978) ("Speculative allegations as to possible prejudice do not meet the burden of showing an abuse of discretion in denying a motion for severance.").

## C. THE DEFENDANTS SHOULD NOT BE GRANTED ADDITIONAL PEREMPTORY CHALLENGES.

In her motion, the defendant requests that the Court grant her additional peremptory challenges to be exercised severally by her.   *See* Def. Pretrial Motions at 5.   In support of this request, the defendant speculates that she "might be denied peremptory challenges," *id.* at 5, and that her codefendants "might employ conflicting jury selection strategies."   *Id.*   The defendant does not identify how many additional peremptory challenges she is requesting nor has she provided any facts to support her request for additional peremptory challenges.   For the reasons set forth below, the defendant's request that the defendants be permitted to exercise their peremptory challenges severally and that they be granted additional peremptory challenges should be denied.

In this case, each side is entitled to three peremptory challenges.   *See* Fed. R. Crim. P. 24(b)(3).   It is within the Court's discretion to grant additional peremptory challenges in cases with multiple defendants and to allow the defendants to exercise those challenges separately or jointly. *Id.*   It is proper and appropriate for a Court to require codefendants to exercise their peremptory challenges jointly.   *See, e.g.*, *United States v. Lopez*, 649 F.3d 1222, 1244 (11th Cir. 2011) (approving requirement of the defendants' unanimous consent for the exercise of their peremptory challenges); *United States v. Hooper*, 575 F.2d 496, 498 (5th Cir. 1978) (rejecting defendant's argument that requiring codefendants to jointly exercise peremptory challenges was improper or prejudicial).

"In multiple defendant cases the award of additional challenges is permissive rather than mandatory, and rests in the trial judge's sound discretion." *Haldeman*, 559 F.2d at 79; *United*

*States v. McClendon*, 782 F.2d 785, 787 (9th Cir. 1986) ("[T]here is no 'right' to additional peremptory challenges in multiple defendant cases. The award of additional challenges is permissive, not mandatory, and rests in the trial court's sound discretion.").   Here, the allegations against each of the defendants are identical.   The defendants' interests are closely aligned and there is no reason to believe that they have diverging interests or may employ conflicting jury selection strategies.   There is no basis, nor has this or any of the defendants offered any, to permit the defendants to exercise their peremptory challenges severally or to award the defendants more than the three peremptory challenges allowed by law. *See McClendon*, 782 F.2d at 788 ("Disagreement between codefendants on the exercise of joint peremptory challenges does not mandate a grant of additional challenges unless defendants demonstrate that the jury ultimately selected is not impartial or representative of the community.").

However, in the event that the Court grants the defendant's request and allows the defendants to exercise additional peremptory challenges, the Government requests that it also be allowed additional peremptory challenges as well.   Although the Court may not grant the Government additional peremptory challenges without the defendants' consent, courts have found that defendants should not be permitted to exercise their peremptory challenges severally nor be granted additional peremptory challenges when doing so would create a disparity between the number of peremptory challenges exercised by the Government and the defense.   *See*, *e.g.*, *Mitchell*, 384 F. Supp. at 565, *aff'd sub nom. Haldeman*, 559 F.2d 31 ("The Court was willing, and is willing, to grant additional challenges to the defendants provided there were no objections to a proportionate increase in challenges for the government. But to grant the defendants five challenges each, while restricting the government to six challenges, would effectively give one side, the defense, the power to select the jury. That would not be fair nor would it be consistent

with our system of justice."); *United States v. Allen*, 289 F. Supp. 2d 230, 241 (N.D.N.Y. 2003) ("[T]he award of additional peremptory challenges may be conditioned on defendants' assent that the government also receive additional challenges.").

### D. THE DEFENDANT'S REQUEST FOR NOTICE OF GOVERNMENTS INTENT TO USE EVIDENCE IS MOOT.

Pursuant to Rule 12(b)(4)(B) of the Federal Rules of Criminal Procedure, the defendant requests notice of the Government's intent to use evidence in its case-in-chief.   *See* Def. Pretrial Motions at 9.   Rule 12(b)(4)(B) provides: "the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16." "The purpose of this provision of Rule 12 is to "insur[e] that a defendant knows of the government's intention to use evidence to which the defendant may want to object" so that the defendant can "avoid the necessity of moving to suppress evidence which the government does not intend to use." *United States v. Anderson*, 416 F. Supp. 2d 110, 112 (D.D.C. 2006). In response, the Government notes that it filed its potential exhibit list with the Court on January 10, 2020. *See* ECF No. 84.   The Government notes that compliance with Rule 12(b)(4)(B) through an exhibit list does "not prevent the government from using evidence not disclosed under Rule 12 for such purposes as refreshing its witnesses' recollection, impeaching defendant's witnesses, or presenting its rebuttal case, 'so long as the use of [those documents] was not planned in advance' of trial." *Anderson*, 416 F. Supp. 2d at 113 (quoting *United States v. Poindexter*, 727 F.Supp. 1470, 1484 (D.D.C.1989)). Accordingly, the Court should deny this request as moot.

**E.  THE DEFENDANT'S MOTION FOR LEAVE TO FILE PRETRIAL MOTIONS SHOULD BE DENIED.**

The defendant has moved for additional time to file pre-trial motions pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Criminal Procedure.  *See* Def. Pretrial Motions at 10.  Trial is fewer than four weeks away, and the defendant has made no indication of what additional motions she wishes to file or why she needs additional time. As such, this motion should also be denied.

**F.  THE DEFENDANT'S MOTION TO ADOPT OTHER DEFENDANTS' MOTIONS SHOULD BE DENIED AS THERE ARE NO OTHER PENDING MOTIONS.**

The defendant also moves to adopt any motions submitted by the other defendants in this case.  *See* Def. Pretrial Motions at 10.  None of the other defendants have filed any motions so the Court should deny this request as well.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar No. 472845

By:  _____/s/_____

Danielle Rosborough
Special Assistant United States Attorney
D.C. Bar No.  1016234
Jessi Camille Brooks
Assistant United States Attorney
C.A. Bar No. 283055
555 4th Street, N.W.,
Washington, D.C. 20530
202-252-6837
Danielle.Rosborough@usdoj.gov
Jessica.Brooks@usdoj.gov