**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **No.: 1:19-cr-00169-BAH** |
| **KEVIN BRUCE ZEESE,** | |
| **MARGARET ANN FLOWERS,** | |
| **ADRIENNE PINE, and** | |
| **DAVID VERNON PAUL,** | |
| *Defendants.* | |

**GOVERNMENT'S REPLY TO DEFENDANTS' OPPOSITIONS TO ITS MOTION *IN LIMINE* TO LIMIT TESTIMONY AND EVIDENCE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully files this reply in response to Defendants' Oppositions[1] to its motion *in limine* to limit argument, testimony, and evidence. As grounds for this reply, the United States relies on the following points and authorities, the points and authorities cited in its Motion *in Limine* to Limit Testimony and Evidence (ECF No. 83), and such other points and authorities as may be cited at a hearing on the motion.

In its motion *in limine*, the Government identified three categories and fourteen topics which are immaterial and irrelevant to the charged offense and, therefore, should be limited at trial.[2]

---

[1] All four defendants submitted a joint Opposition ("Joint Opposition," ECF No. 88), and Defendant Flowers submitted an additional Supplemental Response in Opposition (ECF No. 89).

[2] In their Joint Opposition, the defendants agree that they will not seek to introduce evidence about three of those topics—namely, the merits of the Guaidó administration as compared to those of the Maduro regime; their personal opinions regarding the political, social, or economic situation in Venezuela; or that they had a right, or even a duty, to violate the law in order to effect a moral, social, or political purpose. ECF No. 88 at 1-2.

In their Joint Opposition, the defendants accuse the Government of seeking to deprive them of their constitutional right to present a complete defense as to the *mens rea* element of 18 U.S.C. § 118.  See ECF No. 88 at 1.  Specifically, the defendants contend that they should be permitted to present evidence or make arguments about (1) how the defendants "cooperated with law enforcement during their time at the Embassy"; (2) why the defendants believed they had the right to be in the Embassy; (3) why they believed the trespassing notice was invalid; and (4) "what they understood about the application of domestic and international law to the understanding events." *Id.* at 4.  The defendants' Joint Opposition is devoid of any cogent argument explaining how such evidence is relevant to the offense charged, much less admissible.  As set forth below, the defendants' position has no legal foundation, and the Government's motion *in limine* should be granted.

## I.      LEGAL STANDARD

As a threshold matter, "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. Evidence is relevant only if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. Rule Evid. 401. In other words, only evidence that is relevant to the elements of the charges against the defendant, or to a legal defense, is admissible at trial. *See* Fed. R. Evid. 402. While it is undisputed that the "Constitution entitles a defendant an opportunity to present his version of the facts to the jury so it may decide where the truth lies, that guarantee extends only to ***relevant*** evidence." *United States v. Libby*, 475 F. Supp. 2d 73, 91 (D.D.C. 2007) (internal citations and quotations omitted) (emphasis added) (collecting cases).  Moreover, "even a defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions, including restrictions imposed by the other rules of evidence such as Rule 403." *Id.*

Finally, the defendants' bear the burden of establishing not only that the evidence they seek to admit is relevant but also that it is admissible under the Rules of Evidence. *United States v. Bikundi,* No. 14-CR-030 (BAH), 2015 WL 5915481, at *3 (D.D.C. Oct. 7, 2015).

## II.   ARGUMENT

### A.   The Court Should Limit Argument and Evidence Regarding the Defendants' Interactions Prior to the Dates Charged in the Information.

First, the defendants should not be permitted to introduce evidence relating to actions taken prior to the time frame charged in the information, *see* ECF No. 83 at 2, including evidence that they "cooperated"[3] with law enforcement while they were in the Venezuelan Embassy.  *See* Joint Opposition, ECF No. 88 at 4.  The Court already addressed and ruled on this issue at the December hearing on the defendants' motion to compel.  *See* Transcript of Ruling from the Bench at 28:17-22, *United States v. Zeese*, et al., 19-cr-169 (2019) (DE-82).  Specifically, the Court stated, in short, that, "any purported compliance or cooperation with law enforcement in late April or early May is, as the government states, simply irrelevant, as well as immaterial." *Id.*  Nothing has changed since that order, and the defendants should not be able to present argument or evidence regarding their purported "cooperation" with law enforcement prior to dates charged in the information. Further, in addition to this evidence being irrelevant to the charged crime, this evidence is also inadmissible and, under Rule 403, the value of any such evidence is outweighed by the likelihood of jury confusion. *See* ECF No. 71 at 5-6 (citing case law that such evidence is inadmissible).

---

[3] As the Court is aware, the Government disputes the notion that the defendants at any time "cooperated" with law enforcement.

**B.     Evidence and Argument about the Defendants' Purported Beliefs Regarding the Legality of the Diplomatic Security Service's Orders or the Legality or Legitimacy of the Maduro Regime Are Legally Baseless and Irrelevant and Should be Excluded.**

As an initial matter, the Government does not—as the defense contends (ECF No. 88 at 4)—suggest or believe that 18 U.S.C. § 118 is a strict liability offense; plainly, as the statute makes clear, to be found guilty of violating 18 U.S.C. § 118, the defendant must have "knowingly and willfully obstruct[ed], resist[ed], or intefer[ed] with a federal law enforcement agent" engaged in protective functions.[4]   The Government has represented the proper intent required in prior pleadings.  *See, e.g.,* ECF No. 71 at 7-8 (Government's Response to Defendants' Motion to Compel, discussing "willfulness").

---

[4] The Defendants rely on *United States v. Sheehan*, 512 F.3d 621 (D.C. Cir. 2008).  That case is inapposite and involved a defendant charged with violating a permitting regulation of the National Park Service, pursuant to the authority granted by 18 U.S.C. § 3, which has since been repealed. In that case, the defendant argued that the Court and the Government had wrongfully applied a strict liability standard to her conduct and that the Court had erred in excluding evidence of her *mens rea.*  In that case, the defendants sought to introduce evidence about their knowledge regarding whether a permit had been obtained by anyone for the demonstration and evidence that the defendants could not hear the warnings from the National Park Service to vacate the area.  *See id.* at 632-33; *United States of America v. Sheehan*, Appellant's Brief, 2007 WL 2262976 (D.C. Cir. June 13, 2007) at Section I. B (arguing that defendants should have been permitted to introduce evidence and testimony regarding whether the warnings stated that there was no permit and whether defendants were able to hear the warning to leave).  Here, in contrast, the Government intends to introduce ample evidence that the defendants heard and understood the U.S. State Department's orders to vacate the Embassy (indeed, in addition to being read over loudspeakers more than a dozen times, the orders were personally read to the defendants and the defendants were given copies of the order), that the defendants refused to do so, and that by refusing to vacate the Embassy, the defendants interfered with the protective functions of the Department of State. Certainly, if the defendants wish to contend, as the defendants in *Sheehan* did, that they did not hear, understand, or comprehend the orders and therefore could not have knowingly and willfully interfered, the Government would have no basis to object to that defense.  But it does not appear that that is the type of evidence the defendants wish to introduce.  Rather, as set forth in this brief, defendants wish to present a defense that has no basis in law and which does not, in fact, bear in any way on whether they knowingly and willfully interfered with an agent involved in the protective functions of the Department of State.

Courts considering statutes nearly identical to the one charged here, have uniformly agreed that the knowing and willful requirement relates to the defendant's knowledge that a law enforcement agent was engaged in a protective function and that the defendant willfully interfered with the agent. *See United States v. McPherson*, 21 F.3d 429 (6th Cir. 1994) (affirming jury instruction for violation of 18 U.S.C. 3056(d) that "[i]n order to satisfy this element of the offense you must find beyond a reasonable doubt that [the defendant] knew Mr. Garrett was a law enforcement officer engaged in the performance of protective functions and that she acted intentionally."); *United States v. Brown*, 669 F.3d 10, 20 (1st Cir. 2012) (explaining there was sufficient evidence from which a fact finder could conclude that the defendant "knew that the Marshals were engaged in official duties" and that the defendant "intended to prevent the Marshals from discharging those official duties.").

As set forth in their Joint Opposition, the defendants "will not contend that they had a right or a duty to violate the law in order to effect a moral, social, or political purpose" but rather "will contend that they did not violate the law." ECF No. 88 at 5. And although not entirely clear from the defendants' Joint Opposition, the Government surmises that when the defendants say they wish to introduce evidence that they did not violate the law, they mean that they intend to introduce evidence and make arguments regarding their belief that Nicolas Maduro is the president of Venezuelan and that the Maduro regime gave the defendants permission to be in the Embassy *see* ECF No. 88 at 4.[5] Likewise, with respect to the defendants' argument regarding their belief that

---

[5] It bears emphasizing that this is not an unlawful entry case. Nonetheless, defendants appear to be recycling the same flawed argument made in their motion to compel, ECF 70 at 10, namely that they have some sort of *bona fide* belief defense based on their personal recognition of the Maduro regime such that they "did not possess the requisite *mens rea* for the charged offense when they failed to leave the Embassy." *Id.*; *see also* ECF 88 at 4 (arguing defendants have a right to present evidence about "why they believed they had a right to be in the Embassy."). Not only does such a defense, available only under state law, have no application to this case, but also, the Defendants

the trespassing notice was invalid, *see id.*, the Government assumes that the defendants intend to introduce argument and evidence regarding their belief that Diplomatic Security Service's orders that the defendants vacate the Embassy were legally invalid because the orders referenced demands from Ambassadors Vecchio and Tarre—who the defendants do not recognize as having authority over the Embassy—or because the physical notice lacked letterhead or a signature.  Finally, the Government assumes that when the defense states that they wish to introduce argument and evidence about "what they understood about the application of domestic and international law" to their actions, they intend to offer evidence or argument regarding their beliefs that: (1) Maduro is the legitimate president of Venezuela; or (2) that the Government's actions violated the Vienna Convention and that the defendants were therefore justified in refusing to leave the Embassy in order to prevent violations by the United States of international law.[6]  In sum, as set forth above, the defendants apparently contend that they cannot have knowingly and willfully interfered with agents engaged in protective functions if the defendants personally, albeit wrongly, believed that the law enforcement agents with whom they were interacting were issuing an unlawful order

---

could not avail themselves of the defense if it did. Under D.C. law, it is a defense to unlawful entry if the defendant entered a place "with a good purpose and a bona fide belief in his or her right to enter." *Darab v. United States*, 623 A.2d 127, 137 (D.C. 1993). Such a belief must be reasonable and based in "pure indicia of innocence" and "evidence of awareness of a request to leave will defeat a bona fide belief claim." *Id.* In order to be able to present evidence of a defense, the defense must be legally cognizable.  Here, as a matter of law, Juan Guaidó is the President of Venezuela with all the rights and privileges that come with his recognition as such and the defendants were not only indisputably aware of that fact but also of the fact that they had been ordered to leave the Embassy.  Again, if the defendants wish to make the incredible argument to the jury that they did not understand or comprehend the order to leave, the Government has no basis to oppose argument or evidence relating to that defense, but the defendants should not be permitted to put forth a legally infirm defense based on their personal belief that Nicolas Maduro had any authority over the Embassy.

[6] This position appears to be a gloss on the "Nuremberg defense" which recognizes a citizen's privilege to violate domestic law in order to prevent continuing international violations by his country.

(which they were not), or if the defendants earnestly believed they had a right to be present in the Embassy (which they did not).

Putting aside the fact that the defendants have not carried their burden of establishing how this information is relevant and admissible, the defendants' argument regarding their personal beliefs as to the lawfulness of Diplomatic Security Service's order is not a legally cognizable defense and should therefore be excluded at trial.  The First Circuit's opinion in *United States v. Brown*, 669 F.3d 10 (1st Cir. 2012) is particularly instructive.  There, the defendant was charged with violating 18 U.S.C. § 111[7], an analogous statute to 18 U.S.C. § 118.  *Id.*  The defendant had previously been convicted of tax offenses, and the Marshals sought to arrest the defendant for failing to appear in court.  The defendant argued that he should be permitted to introduce evidence that he lacked the *mens rea* or intent to be found guilty of impeding the Marshals in the performance of their official duties based on his belief that the Marshals lacked the authority to arrest the defendants because his prior tax conviction was illegitimate and the tax laws unconstitutional.  *Id.* at 19-20. In other words, the defendant contended that he could not have knowingly and intentionally interfered with federal law enforcement engaged in official duties because the Marshals' authority to arrest the defendant was legally unsound.  *Id.*  The First Circuit wholly rejected this argument and affirmed the district court's exclusion of this evidence as irrelevant:

> [The defendant] was well aware that he was convicted at trial and that there was a warrant out for his arrest. Therefore his belief that the Marshals lacked authority to arrest him (assuming the belief was genuinely held) would have been based on an assumption that the conviction and warrant were invalid—the invalidity stemming from the supposed sham nature of the tax trial. The problem with this reasoning is that it presupposes that the constitutionality of [the defendant's] conviction, and the

---

[7] 18 U.S.C. § 111 penalizes any person who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties."

validity of the warrant, impact whether the Marshals were engaged in "official duties." They do not, and thus [the defendant's] *mens rea* as to these facts is irrelevant. Whether a federal officer is engaged in official duties "does not turn on whether the law being enforced is constitutional or applicable to the defendant, or whether the levy order being enforced was validly obtained; rather it turns on whether the federal officer is acting within the scope of what he is employed to do or is engaging in a personal frolic of his own."

*Id.* The First Circuit further held that the defendant's "subjective beliefs about the legitimacy of tax laws and his tax trial were irrelevant as to whether he intended to commit these offenses [18 U.S.C. 111]."

Likewise in *United States v. Johnson*, 462 F.2d 423, 427–28 (3d Cir. 1972), the Third Circuit considered a conviction under 18 U.S.C. § 111 and affirmed the district court's refusal to allow the defendant to enter evidence that he believed that a seizure warrant was illegal or invalidly executed or that the warrant was, in fact, legally unsound and therefore could not have resisted law enforcement.  In affirming the exclusion of this evidence, the Third Circuit explained that the purpose of these sections of the U.S. Code "is to provide federal officers the protection of federal courts when such officers are performing their duties" and that this "purpose is not achieved where individuals are at liberty to resist federal officers in the performance of their duties because of a difference of opinion, whether real or imagined, regarding either the scope or the methods used to carry out those duties."  *Id.*; *see also United States v. Cunningham*, 509 F.2d 961, 963 (D.C. Cir. 1975) (analyzing 18 U.S.C. § 111 and explaining that federal officers engaged in their duties cannot be resisted "even if the resistor turns out to be correct that the resisted actions should not in fact have been taken.") (collecting cases); *United States v. Peifer*, 474 F. Supp. 498, 505 (E.D. Pa. 1979) (explaining that "the validity of the search warrant served by Marshal Duross was irrelevant, and disallowing testimony on this issue was proper" in trial of defendant for knowingly

and willfully obstructing, resisting and opposing an officer of the United States in his service and

execution of judicial process in violation of 18 U.S.C. § 1501), *aff'd*, 615 F.2d 1354 (3d Cir. 1980).

Moreover, in this case, the defendants' beliefs regarding the application of international

law (*i.e.,* that Nicolas Maduro is the president of Venezuela under international law or that the U.S.

Government violated the Vienna Convention[8] in removing the defendants from the Embassy) is

also irrelevant to the charged offense and, further, the value of any evidence regarding the

application of international law to the charged offense is substantially outweighed by the danger

that such testimony will confuse the issues and mislead the jury.  *See* Fed. R. Crim. P. 403; *United*

*States v. Kelly*, No. 2:18-CR-22, 2019 WL 5077546, at *34 (S.D. Ga. Apr. 26, 2019), *report and*

*recommendation adopted*, No. CR 2:18-022, 2019 WL 4017424 (S.D. Ga. Aug. 26, 2019)

(explaining that Courts uniformly reject argument that defendants are entitled to present a defense

based on their assertion that the defendants were protecting, enforcing, or complying with

international law) (collecting cases); *United States v. Allen*, 760 F.2d 447, 449 (2d Cir. 1985)

(affirming district court's decision precluding defendants from putting on a defense regarding the

defendant's belief that they were upholding international law when they engaged in a protest at an

Air Force Base); *United States v. Springer*, 51 F.3d 861, 868 (9th Cir. 1995) (defendant, who was

protesting nuclear bomb testing and convicted for interfering with the Secret Service, was not

entitled to present evidence regarding his belief that he "was obeying international law" by failing

to surrender after his conviction because such evidence was irrelevant to the offense charged);

*United States v. Kelly*, No. CR10-5586BHS, 2010 WL 4857795, at *2 (W.D. Wash. Nov. 22, 2010)

(rejecting defendants' argument that international law provided a defense to charges relating to

---

[8] The Government complied with the Vienna Convention in removing the defendants from the
Embassy because, among other things, the Venezuelan Government issued a waiver of
inviolability and requested the U.S. Government's assistance in removing the defendants.

their protest at a naval base and noting that federal courts have uniformly rejected the application of an international law defense), *aff'd* 676 F.3d 912 (9th Cir. 2012) (affirming district court's exclusion of defendants' international law defense and noting that it is not appropriate for the jury to decide whether international law abrogates domestic law as that is a legal question for the judge, not the jury); *United States v. Kabat*, 797 F.2d 580, 590 (8th Cir. 1986) (affirming district court's decision to preclude defendants from asserting that they had a privilege or defense to disobey domestic law in order to prevent alleged violations by the United States of international law).

Finally, the defendants also apparently take issue with some of the potential exhibits on the Government's exhibit list.  The Government would welcome the opportunity to address any specific exhibits the Court wishes to consider in advance of trial at the hearing.  However, for purposes of this motion, the Government notes that most, if not all, of the photographs that the Government intends to introduce were taken between May 13, 2019 and May 16, 2019—the dates charged in the information—and not, as the defendants assert "weeks or months prior to the time period charged in the information." Although the exhibits recognizing Carlos Vecchio and Gustave Tarre as Venezuelan Ambassadors to the United States pre-date the conduct charged in the information, they, in connection with the April 26, 2019 letter from Ambassadors Vecchio and Tarre to the Department of State and Secret Service go directly to establishing an element of the offense charged—that Special Agent Gilmore and other members of the Diplomatic Security Services were engaged in the performance of their protective functions when they ordered the defendants to vacate the Embassy.  Collectively, those documents establish that Ambassadors Vecchio and Tarre, as a matter of law, had authority over the Embassy and that they specifically "request[] protective services  in ensuring that the Embassy premises is free of trespassers" and

"request[] the assistance of the U.S. [Department of State] . . . with the removal of any person on the premises who has not been so authorized to be present."

## III.     CONCLUSION

The defendants may not agree with the law, but the law is clear—the U.S. Government has recognized that the Juan Guaidó is the President of Venezuela, and he and his Government are therefore lawfully entitled to assert control over the Venezuelan Embassy in Washington, D.C. Accordingly, the defendants should not be permitted to introduce argument or evidence regarding the legitimacy of Juan Guaidó's presidency, their personal beliefs that Nicolas Maduro is the rightful president of Venezuela, or that they had permission to be in the Embassy from the Maduro regime.  None of these assertions supports a legally cognizable defense to their actions and the probative value of any evidence relating to these topics is substantially outweighed by its potential to confuse the issues and mislead the jury.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar No. 472845

By:    _____/s/_____
Danielle Rosborough
Special Assistant United States Attorney
D.C. Bar No.   1016234
Jessi Camille Brooks
Assistant United States Attorney
C.A. Bar No. 238055
555 4th Street, N.W.,
Washington, D.C. 20530
Danielle.Rosborough@usdoj.gov
Jessica.Brooks@usdoj.gov
202-252-6837